IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

KELLY CHAVEZ,

      Plaintiff,

v.

                                                      No. 1:16-cv-00518-KRS

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

      Defendant.

## OPINION AND ORDER DENYING MOTION TO REVERSE OR REMAND AND DISMISSING CASE WITH PREJUDICE

Plaintiff Kelly Chavez seeks review of the Social Security Administration's denial of his application for disability insurance benefits. *See* 42 U.S.C. § 423. With the consent of the parties to conduct dispositive proceedings in this matter, *see* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b), the Court has considered Chavez's motion to reverse and remand the agency's decision, the Commissioner's response in opposition, and Chavez's reply. [*See* Docs. 21; 26; & 27]. Because the Administrative Law Judge ("ALJ") correctly determined that Chavez failed to establish a *per se* disability as of December 31, 2006 and appropriately addressed the retrospective opinions of two doctors in concluding Chavez could perform sedentary work, the Court **DENIES** Chavez's motion to reverse and remand and **DISMISSES** the case with prejudice.

## I. BACKGROUND

Chavez alleged disability as of December 31, 2006 at the age of forty-four and on the last date he last qualified for benefits ("date last insured").[1] Following a hearing, ALJ Lilian Richter

---

[1] The Court recites only the relevant background here, but is aware of the significant procedural history of the case, which included a remand by Judge Vidmar of this Court to the agency because the first ALJ that reviewed the matter impermissibly stopped the evaluation of Chavez's disability at step two of the five-step process discussed in more detail below. The instant application for benefits, filed on December 20, 2008 is not Chavez's first. In 2008, Chavez

denied Chavez's application for benefits. [AR 377-98; 399-463]. At step three of the five-part framework[2] used to evaluate disability, the ALJ concluded that Chavez's hip problems did not meet or equal Listing 1.02 as of December 31, 2006. A finding that the hip impairment satisfied Listing 1.02 would have required an award of benefits for major joint dysfunction. [AR 383-84]; 20 C.F.R. part 404, subpt P, app. 1, § 1.02. At steps four and five, the ALJ determined that Chavez could not return to his past work as a janitor or auto mechanic, but as of his last-insured date retained the residual functional capacity ("RFC") to perform sedentary work. [AR 385-92]. Relying on the testimony of a vocational expert, the ALJ concluded that sufficient jobs existed in the national economy that matched Chavez age, education, work experience, and limitations, such as nut sorter and brake-linings coater. [AR 392-93]. Chavez subsequently filed the instant action and moved to reverse or remand the agency's adverse determination. [Docs. 1; 21].

## II. STANDARD OF REVIEW

This Court reviews the ALJ's decision to determine whether it is supported by substantial evidence and the ALJ applied the correct legal standards. *See Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014). If substantial evidence supports the conclusion that the plaintiff is not disabled and the ALJ followed the law, the plaintiff is not entitled to relief. *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). The term "substantial evidence" means that which "a reasonable mind might accept as adequate to support a conclusion." *Id.* at 1118

---

unsuccessfully sought disability insurance benefits with the assistance of a non-attorney representative. Chavez did not appeal the adverse determination from that case. The first ALJ considered but did not apply issue or claim preclusion to the instant application.
[2]The five-part sequential analysis is used to determine disability where, as here, a plaintiff's application has been denied both initially and on reconsideration. *See* 20 C.F.R. § 404.1520(a)(4)(i–v). The framework asks whether the plaintiff (1) has engaged in "substantial gainful activity" (Step 1); (2) has a "severe medically determinable . . . impairment . . . "or a combination of impairments" that either has lasted or is expected to last at least one year (Step 2); (3) has impairments that meet or equal one of the presumptively disabling impairments the agency has listed (Step 3); (4) is unable to perform his "past relevant work"; and (5) retains the residual functional capacity to perform work in the national economy in light of his age, education, and work experience 20 C.F.R. § 404.1520(a)(4)(i–v). The parties do not challenge the ALJ's determination that Chavez has not engaged in substantial gainful activity since his onset date and that he suffers from severe impairments at steps one and two respectively. For the sake of brevity, the Court does not further recount them.

(citation and internal quotation marks omitted). Even if the Court could reach the opposite conclusion, the decision must stand if the record as a whole is not "overwhelmed by other evidence" to the contrary or unless a "mere scintilla" supports it. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

### III. ANALYSIS

Chavez makes three arguments in support of remand: (1) the ALJ erred at step three in concluding that Chavez's hip impairment did not meet or equal Listing 1.02; (2) as an alternative to the first argument, the ALJ failed to develop the administrative record as to whether Chavez could "ambulate effectively"; and (3) the ALJ improperly rejected the opinions of two physicians in fashioning Chavez's RFC.

#### A. <u>Step-Three Determination</u>

To qualify for benefits under Listing 1.02, Chavez was required to prove his hip impairment "me[t] [or equaled] all of the specified medical criteria" on December 31, 2006 and had done so for at least twelve continuous months. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.* In determining whether a plaintiff satisfies a Listing, the ALJ may consider only medical evidence. *See* 20 C.F.R. § 404.1526(b). Moreover, the ALJ must "set out specific findings and . . . reasons for accepting or rejecting evidence at step 3." *Clifton v. Charter*, 79 F.3d 1007, 1009 (10th Cir. 1996).

Listing 1.02 mandates a finding of disability where the plaintiff proves "major dysfunction of a joint due to any cause." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. "Major dysfunction," refers to "gross anatomical deformity . . . and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction or

ankylosis of the affected joint(s)." *Id.* As is relevant here, the plaintiff must also demonstrate an inability to "ambulate effectively." *Id.* In this case, the agency does not dispute that Chavez's hip impairment meets Listing 1.02's anatomical criteria. The issue therefore is whether Chavez satisfied his burden to show he could not ambulate effectively on his date last insured.

An "[i]nability to ambulate effectively," is "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2. Relatedly, "[i]neffective ambulation" is synonymous with "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* By contrast, effective ambulation concerns an individual's "capab[ility] of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* A person "must have the ability to travel without companion assistance to and from a place of employment or school." *Id.*[3] In addressing Listing 1.02, the ALJ concluded that "the evidence does not demonstrate that [Chavez] . . . had the degree of difficulty in ambulating as defined in [the Listing]." [*Id.*]. Chavez asserts this determination is both legally erroneous and factually unsupported.

### 1. *Legal challenge*

Chavez argues that the ALJ did not weigh the evidence and make specific findings in considering Listing 1.02. The Court is not persuaded that Chavez's contention is correct. The ALJ indicated in her decision that she gave "particular attention to . . . listing 1.02 for major dysfunction of a joint," and the Court is required to take the ALJ at her word, unless shown

---

[3] As non-exhaustive examples, the Administration lists "the inability to walk without . . . a walker, two crutches or two canes, . . . to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, . . . to carry out routine ambulatory activities, such as shopping and banking, and . . . climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*. Even walking at home "without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Id.*

ankylosis of the affected joint(s)." *Id.* As is relevant here, the plaintiff must also demonstrate an inability to "ambulate effectively." *Id.* In this case, the agency does not dispute that Chavez's hip impairment meets Listing 1.02's anatomical criteria. The issue therefore is whether Chavez satisfied his burden to show he could not ambulate effectively on his date last insured.

An "[i]nability to ambulate effectively," is "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00B2. Relatedly, "[i]neffective ambulation" is synonymous with "insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* By contrast, effective ambulation concerns an individual's "capab[ility] of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living." *Id.* A person "must have the ability to travel without companion assistance to and from a place of employment or school." *Id.*[3] In addressing Listing 1.02, the ALJ concluded that "the evidence does not demonstrate that [Chavez] . . . had the degree of difficulty in ambulating as defined in [the Listing]." [*Id.*]. Chavez asserts this determination is both legally erroneous and factually unsupported.

### 1. *Legal challenge*

Chavez argues that the ALJ did not weigh the evidence and make specific findings in considering Listing 1.02. The Court is not persuaded that Chavez's contention is correct. The ALJ indicated in her decision that she gave "particular attention to . . . listing 1.02 for major dysfunction of a joint," and the Court is required to take the ALJ at her word, unless shown

---

[3] As non-exhaustive examples, the Administration lists "the inability to walk without . . . a walker, two crutches or two canes, . . . to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, . . . to carry out routine ambulatory activities, such as shopping and banking, and . . . climb a few steps at a reasonable pace with the use of a single hand rail." *Id.*. Even walking at home "without the use of assistive devices does not, in and of itself, constitute effective ambulation." *Id.*

otherwise. *See Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (explaining "[w]here, as here, the ALJ indicates he has considered all the evidence our practice is to take the ALJ at his word") (citation and internal alterations omitted)). The ALJ extensively discussed treatment providers' notes, x-rays, and other tests done prior to the date last insured. Those records document a workplace injury to the low back, spasms, discitis, right-leg pain, degenerative disc disease, degenerative changes in both hips, a probable degenerative femoral cyst, antalgic gait, limited right-hip flexion, and occasional use of a cane.[4] [AR 383-86]. The ALJ also reviewed medical records after 2006 showing additional degenerative changes culminating in a total right hip replacement in 2008. [AR 387-92].

Significantly, the ALJ observed the "medical evidence of record demonstrates that [Chavez] was ambulatory well after December 31, 2006," including reports "during physical therapy evaluation [in June, 2008] that his condition had progressed particularly in the last year, that he went to the gym five days a week, walked on a treadmill, lifted weights with his upper

---

[4] The Court is aware that the ALJ's discussion of the medical evidence spans Steps Three, Four, and Five. Moreover, the ALJ discusses Chavez's ability to ambulate effectively more specifically under Listing 1.04, which shares the same definition of and requirement for "ambulation." The Tenth Circuit has emphasized that a failure to make findings at Step Three requires remand only where the ALJ does not adequately supply her reasoning elsewhere in her decision. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 734 (10th Cir. 2005) (remand not required "for a more thorough discussion of the listings when confirmed or unchallenged findings made elsewhere in the ALJ's decision confirm the step three determination under review"). In this case, the Court concludes that the ALJ's discussion of the evidence under the Listing 1.02 and analysis, albeit terse, likely satisfied the ALJ's legal obligation to make specific findings. Even if ALJ Richter technically erred, the comprehensive discussion of the medical evidence throughout the decision is sufficient. *See Fischer-Ross*, 431 F.3d at 733 (10th Cir. 2005); *Clifton*, 73 F.3d at 1009. Citing *Griego v. Colvin*, No. 14-cv-00647-SCY, slip op. at 6 (D.N.M. Jan. 21, 2016), Chavez claims that the Court may not consider the ALJ's step-four analysis because the ALJ took a "negative view" of Chavez's credibility. Putting aside the fact that at the hearing, Chavez appeared to tell the ALJ that his conditions did not meet or equal a listing, the ALJ commented that she found Chavez "only partially credible with respect to the severity of his impairments." [AR 391]. *Griego* does not establish what Chavez contends. In *Griego*, Judge Yarbrough framed the remand analysis as follows: "the Court must decide whether this case is 1) similar to *Fischer-Ross*, where at steps four and five an ALJ provides detailed findings, thoroughly reviewed and upheld by the district court, or 2) like *Clifton*, where the only finding was an RFC for a 'limited range of sedentary work,' which amounted to a bare conclusion that precluded meaningful review." *Id.* (citation omitted). In concluding the ALJ's findings were more like *Clifton*, Judge Yarbrough explained that the ALJ "merely repeated what Mr. Griego said [he can bathe, dress, drive, cook, shop, take out trash, do laundry, maintain his yard, do general clean up, care for his dogs, and attend church] without analysis." *Id.* By contrast, here the ALJ made a comprehensive analysis throughout her decision. While the ALJ did have an issue with Chavez's credibility, the ALJ nonetheless did specifically discuss Chavez's own statements and the medical records showing he could ambulate *after* his date last insured.

body, and stretched." [AR 391]. Additionally, the ALJ explained "[t]reatment notes indicated that [Chavez] used no assistive devices to ambulate and that he walked at a normal community ambulation pace." [AR 38; 657]. The ALJ further noted Chavez "reported [in 2010] that he ha[d] been doing odd jobs for the past eight years." [AR 757].

Taken as a whole, the ALJ's decision is sufficiently supported and reasoned to permit meaningful appellate review.[5] *Cf. Clifton*, 73 F.3d at 1009 (noting at step three that a "bare conclusion is beyond meaningful judicial review"). To the extent Chavez suggests that the ALJ did not consider a combination of impairments under Listing 1.02, Chavez does not explain how the involvement of two weight bearing joints, lumbar spine arthritis, and carpal tunnel syndrome combine to preclude him from being able to effectively ambulate on December 31, 2006. *See Wall*, 561 F.3d at 1048. Thus, Chavez has not demonstrated a legal basis for remand based upon his contention that the ALJ did not weigh the evidence and make specific findings in considering Listing 1.02.

## 2. *Substantiality of the evidence*

Chavez contends that the ALJ's discussion of Listing 1.02 itself demonstrates he satisfied the medical criteria and the record otherwise objectively presents a question as to his ambulatory capacity. The Court takes Chavez to mean the ALJ's step-three determination was unsupported

---

[5] Contrary to Chavez's position, the case law does not require a different result. *Murdock v. Astrue*, 458 Fed. Appx. 702, 703 (10th Cir. 2012), an unpublished Tenth Circuit decision, is unavailing. There, the ALJ "did not discuss the evidence or provide any analysis as to why Ms. Murdock's knee condition did not meet Listing 1.02; instead, the ALJ merely recited the requirements for that listing." *Id.* In this case, the ALJ was exhaustive in her discussion of the evidence. Similarly, in *Griego v. Colvin,* No. 1:14-cv-00647-SCY, slip op. at 6 (D.N.M. Jan. 1, 2016), the ALJ simply concluded "there is no showing that Mr. Griego's right foot deformity with post traumatic osteoarthritis met or equaled a listed impairment" and noted he "considered Listing 1.02 in making this determination." By contrast ALJ Richter described the evidence upon which her ultimate conclusion was based. Finally, *Garcia v. Astrue*, 1:11-cv-00823, slip op. at 7 (D.N.M. June 5, 2012) does not provide a basis for remand. In that case, the sum total of the ALJ's reasoning was two sentences, the first of which concluded that the plaintiff did not meet any listing and the second stated that "[n]o treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment." *Id.* Problematically, the court explained, the ALJ "did not mention a specific listing" and appeared to consider the plaintiff's credibility, not the medical evidence, contrary to the law. *Id.* at 8-9. Remand was required because the ALJ did not satisfy the twin requirement that the ALJ "identify the listed impairments" and that the ALJ's determination "be based solely on the medical evidence." *Id.* Here, ALJ Richter identified the listing at issue and gave reasons based on the medical evidence for her determination.

by substantial evidence.[6] There is no dispute that Chavez suffered degenerative and anatomical changes and eventually required a total hip replacement. The ALJ's discussion of the evidence illustrates this point well. The medically observable changes certainly relate to—and may well establish—Listing 1.02's "anatomical deformity" component. *See* 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.02. The presence of changes in 2006 and before, however, neither relieve Chavez of nor satisfy his burden to show he was unable to ambulate effectively on December 31, 2006. *See Sullivan*, 493 U.S. at 530 ("An impairment that manifests only some of those criteria, no matter how severely, does not qualify.")

The portions of the record Chavez points to do not persuade the Court that the ALJ's decision lacks support.[7] That evidence includes doctors' observations as to the quality and abnormality of Chavez's gait before December 31, 2006, but does not contain opinions suggesting an inability to "ambulate effectively." AR 266 (documenting in 2001, "a slight antalgic gait carrying most of [Chavez's] weight through his lower extremity"); AR 279 (documenting an "irregular gait" in 2003); 594 (commenting after date last insured but prior to hip replacement surgery that Chavez "ambulates with an antalgic gait"); 619 (observing after date last insured but prior to hip replacement surgery that Chavez "does ambulate with a bilaterally antalgic gait"; & 657 (observing "a bilateral antalgic Trendelenburg gait pattern")].

---

[6] In his reply, Chavez argues for the first time that the ALJ's RFC "with respect to Mr. Chavez's ability to stand" is not supported by substantial evidence as illustrated by the ALJ's failure to develop the record. This argument is waived because it was not presented in Chavez's initial brief. *See Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1501 (10th Cir. 1992) (district court acts as a first-tier appellate court); *Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (recognizing "that waiver principles developed in other litigation contexts are equally applicable to social security cases"); *Kruse v. Astrue*, 436 Fed. App'x. 879, 885 (10th Cir. 2011) ("[a]rguments presented for the first time in a reply brief are waived") (citing *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994)); *Baca v. Berryhill*, 2017 U.S. Dist. LEXIS 49066, *41 (D.N.M. Mar. 31, 2017) (reasoning in the context of a social security appeal in the district court that "[w]hen an appellant does not include an issue in the statement of issues in the party's initial brief, that issue is waived on appeal") (citations omitted).

[7] Chavez actually argues that the medical records present "a question" as to whether he could ambulate effectively as of December 31, 2006. Presenting a question as to ambulatory capability, however, is not the same as proving with medical evidence all criteria required by Listing 1.02, as is Chavez's burden at step three. *See Sullivan*, 493 U.S. at 530. As discussed above, however, the Court construes Chavez's contention more broadly to argue the ALJ's step three determination is not supported by substantial evidence.

Chavez does not present authority that a deviation from normal walking is the same as "an extreme limitation on the ability to walk." 20 C.F.R. pt. 404, subpt. P, app. 1, § 1.00. An abnormal gait may well precede or go hand in hand with ineffective ambulation, but the former is not definitive proof of the latter.

This conclusion is underscored by other uncontested evidence. After 2006, Chavez "went to the gym five days a week, walked on a treadmill, lifted weights with his upper body, and stretched." [AR 390-91; 657]. As discussed above, Chavez was able to walk without an assistive device at a normal community pace. [AR 391; 657]. Chavez later clarified at the hearing that he walked "maybe 10" minutes on the treadmill per day in preparation for surgery in 2008. [AR 441]. In sum, the ALJ's determination at step three is supported by substantial evidence. The Court, therefore, affirms the determination by the ALJ that Chavez did not establish that his impairment, or combination of impairments, met or equaled listing 1.02.

### B. Sufficiency of the Record

Alternatively, Chavez maintains that the ALJ had the duty to "fairly develop the record" to determine whether Chavez could ambulate effectively. The Court agrees "the ALJ bears responsibility for ensuring that an adequate record is developed during the disability hearing consistent with the issues raised." *Maes v. Astrue*, 522 F.3d 1093, 1096-1097 (10th Cir. 2008) (citation omitted). However, "the ALJ should ordinarily be entitled to rely on the claimant's counsel to structure. . . [the] claimant's case in a way that the claimant's claims are adequately explored," and the "ALJ is not required to act as the claimant's advocate in order to meet his duty to develop the record." *Id*. at 1097.

Chavez was represented at the hearing by counsel. Counsel did not assert that the record was incomplete; instead, Chavez's lawyer confirmed that aside from one exhibit, he would not

be submitting any additional materials for consideration. [AR 399; 402].[8] More significantly, the ALJ asked counsel "are you alleging that anything meets or equals a listing?" The response was "no."[9] Chavez may not now fault the ALJ for an issue Chavez did not raise until later stages of the litigation. *See Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004) (rejecting the argument that the ALJ should have developed the record where "during the hearing before the ALJ, plaintiff's counsel did not indicate or suggest to the ALJ that any medical records were missing from the administrative record"). Moreover, Chavez does not fully explain how he expected the ALJ to "develop the record." To the extent Chavez wanted an opinion from a doctor as to functional limitations, Chavez was permitted to and did submit retrospective assessments from two physicians. Furthermore, Chavez did not make a proffer concerning any missing medical records.

In his reply brief, Chavez contends that under Section I-2-5-34(A)(2) of the Administration's Hearing, Appeals, and Litigation Manual ("HALLEX"), the ALJ should have hired a medical expert to determine whether Chavez's hip impairment met or equaled Listing

---

[8] The relevant testimony provides: "ALJ: . . . Mr. Armstrong have you and the claimant had an opportunity to review the file?
ATTY: Yes, I have, judge.
ALJ: You submitted an additional document it looks like late in the day which I've just added to the exhibits as Exhibit 12F. Other than that, do you have any other documents that you will be submitting in this case?
ATTY: No, judge. . . ." [AR 402-403]. Additionally, Mr. Armstrong "believe[d]" the "file" to be "complete" and had no "objection to the relevance of the documents in the file." [AR 404].

[9] Chavez claims his attorney's statement is equivocal. For purposes of completeness, the full exchange reads:
"ALJ: . . . So let's go over what you're alleging are severe impairments that prevented work as of . . . DLI.
ATTY: Right. The osteoarthritis of the right hip, the degenerative disc disease L4, L5, and the carpal tunnel syndrome. It's all orthopedic issues, musculoskeletal, your honor.
ALJ: Now are you – I didn't see medical evidence for carpal tunnel until after the date last insured, so is that one of the impairments that you're saying existed. It just wasn't diagnosed at that time?
ATTY: That's correct.
ALJ: Okay.
ATTY: Yes. And that's an accurate rendition – what you just indicated, your honor.
ALJ: And that might be true for the DJJ or the degenerative disc disease at L4, L5, but I can't remember off the top of my head. I wish I had –
ATTY: Right []
ALJ: -- that kind of memory. And are alleging that anything meets or equals as listing?
ATTY: No. It think it clearly [phonetic] shows it should be a consideration, but not at that time." [AR 405-406].

1.02.[10] Even assuming Chavez preserved this argument for review, it is not entirely clear that HALLEX binds the Administration. *See Baca v. Berryhill*, 2017 U.S. Dist. LEXIS 49066, *41, n. 11 ("HALLEX . . . [provisions] do not have the force of law, are not binding on the [Social Security Administration], and do not provide a basis for the Court to rule") (quoting *McCoy v. Barnhart*, 309 F.Supp.2d 1281, 1284 (D. Kan. 2004)). In any event, subsection A(2)[11] on which Chavez relies is by its plain language discretionary, and Chavez does not argue, much less provide any authority, to support an abuse of discretion under these circumstances. The Court therefore rejects Chavez's argument that remand is necessary to further develop the record.

### C. Medical Opinions

In 2013, John Vigil, MD examined Chavez once, determined Chavez could not perform even sedentary work, and opined Chavez was "completely disabled" dating back to 2002. [AR 6-15]. Later that year, Chavez's orthopedic surgeon Christopher Hanosh, MD similarly assessed Chavez's "ability to do work-related actives." [AR 50-51]. Dr. Hanosh's evaluation did not purport to relate to Chavez's functional capacity on December 31, 2006. Dr. Hanosh subsequently wrote a letter in 2015 confirming he "reviewed the report done on Kelly Chavez by Dr. John Vigil, MD" and "concur[ed] with the findings and conclusions . . . regarding Mr. Chavez's conditions." [AR 1092].

In formulating Chavez's RFC to include sedentary work, the ALJ afforded Dr. Vigil's opinion "little weight" and did not give Dr. Hanosh "significant weight." The ALJ considered Dr. Hanosh's correspondence in tandem with Dr. Vigil's assessment and rejected them for their

---

[10] First raising the issue of HALLEX in a reply brief may well constitute waiver of that issue. *See Hamilton*, 961 F.2d at 1501 (district court acts as a first-tier appellate court); *Berna*, 101 F.3d at 632-33 (recognizing waiver doctrines "are equally applicable in social security cases"); *Kruse*, 436 Fed. App'x. at 885 ("Arguments presented for the first time in a reply brief are waived."); *Baca v. Berryhill*, 2017 U.S. Dist. LEXIS 49066, at *41 ("When an appellant does not include an issue in the statement of issues in the party's initial brief [in the district court], that issue is waived [in the district court]") (citations omitted).
[11] HALLEX I-2-5-34 (A)(2) provides "[w]hen an ALJ May Obtain an ME Opinion (Discretionary)" and explains "[a]n ALJ may need to obtain an ME opinion, either in testimony at a hearing or in responses to written interrogatories, when the ALJ Determines whether a claimant's impairment(s) meets a listed impairment(s)."

(1) heavy reliance "on the subjective report of symptoms and limitations,"; (2) "uncritical[] accept[ance of] . . . what the claimant reported"; (3) omission of citation to "medical evidence supporting [the] opinion that [Chavez] was unable to perform even sedentary work eleven years earlier"; (4) failure to "explain the selection of 2002" as the date Chavez became disabled; and (5) lack of support in the medical records. [AR 389; 391]. The ALJ discounted Dr. Hanosh's 2013 evaluation "due to the passage of time between [Chavez's] date last insured and Dr. Hanosh's treatment of [Chavez]". [AR 391]. Chavez assigns error to the ALJ's reasoning in rejecting both doctors' opinions.

## 1. *Dr. Hanosh*

Chavez argues that the ALJ violated the "treating-physician rule" by failing to give Dr. Hanosh's opinion controlling weight and rejecting the doctor's opinion without articulating specific, legitimate reasons. Under the rule, the ALJ is required to give controlling weight to a treating physician's opinion if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman v. Colvin*, 813 F.3d 1326, 1331 (10th Cir. 2016) (internal quotation marks omitted). If "the treating physician's opinion is not entitled to controlling weight, the ALJ must then consider whether the opinion should be rejected altogether or assigned some lesser weight." *Pisciotta v. Astrue*, 500 F.3d 1074, 1077 (10th Cir. 2007).

As with all medical opinions, the ALJ must discuss the weight she assigns and give good reasons for that weight. *See id.* The "good reasons" are statutory and include: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of that relationship; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the

ALJ's attention which tend to support or contradict the opinion. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citation omitted). Not all considerations are applicable in every case, and the ALJ need not explicitly discuss each factor. *See id.*

The Court is not persuaded that Dr. Hanosh's opinions should be accorded controlling weight. Dr. Hanosh did not actually treat Chavez until long after the date of last insured, a point the ALJ makes in her decision. *See* 20 CFR § 404.1527(c)(2) (explaining that treating sources are entitled to more weight "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations"). Chavez does not cite any legal authority requiring the ALJ to apply the treating-physician doctrine where the doctor first treated the claimant long after the date last insured. *See Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") By adopting Dr. Vigil's finding, however, Dr. Hanosh arguably provided a "retrospective diagnosis" several years after the date last insured, and it is undisputed that Dr. Hanosh *became* a treating physician by operating on Chavez in 2008.

Although the Tenth Circuit has confirmed "a treating physician may provide a retrospective diagnosis of a claimant's condition," "[t]he relevant analysis" is not about controlling weight, but whether the plaintiff "was actually disabled prior to the expiration of her insured status." *Potter v. Sec'y of Health & Human Servs.*, 905 F.2d 1346, 1348-49 (10th Cir. 1990). The Court of Appeals has cautioned courts that "[a] retrospective diagnosis without evidence of actual disability is insufficient," which is "especially true where the disease is progressive." *Id.* Here, Chavez has not established actual disability as of December 31, 2006— the inability "to engage in any substantial gainful activity by reason of any medically

determinable physical . . . impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(A). As the ALJ observed, the "medical evidence of record demonstrates that [Chavez] was ambulatory well after December 31, 2006." [AR 389].

Even assuming the ALJ was required perform the traditional analysis concerning Dr. Hanosh's correspondence adopting Dr. Vigil's limitations, the ALJ articulated specific reasons for rejecting the retrospective diagnoses tied to the applicable regulatory factors.[12] The ALJ examined Dr. Hanosh's 2015 letter together with Dr. Vigil's evaluation and explained both lacked support in the medical records, failed to explain the selection of 2002 as the time Chavez became functionally limited, and assessed Chavez well after his date last insured. The passage of time speaks to the *extent* of the treating relationship (second factor listed above); a lack of medical evidence bears both on supportability as well as record consistency (third and fourth factors); and the failure to explain the choice of 2002 counts as another factor brought to the ALJ's attention that tends to contradict the opinion (sixth factor). *See Keyes-Zachary*, 695 F.3d at 1161. The ALJ did not err by affording Dr. Hanosh's opinion little weight.[13]

---

[12] Chavez also faults the ALJ for impermissibly collapsing the treating physician rule by ignoring the first step of the analysis, which requires the ALJ to examine whether the opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is consistent with the other substantial evidence in the record." *Allman*, 813 F.3d at 1331. Although reversal on this ground may once have been required, more recently the Tenth Circuit has indicated that where a reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling weight" there is no ground for remand. *See Mays*, 739 F.3d at 575. Here, the ALJ specifically gave Dr. Hanosh's assessment "no significant weight," thus implying rather clearly that the ALJ did not give Dr. Hanosh controlling weight.

[13] The non-binding, non-precedential case law to which Chavez cites does not establish that the ALJ was required to do more under the circumstances. *Alvarez v. Colvin*, No. 13-cv-00393-MV-WPL (D.N.M. Oct. 31, 2014), is dissimilar in posture and concerned whether evidence not before the ALJ related back sufficiently to the period on or before the ALJ's decision such that it became part of the record when provided to the Appeals Council. *Rogoff v. Astrue*, No. 10-cv-01041-LAM (D.N.M. Nov. 11, 2011), dealt with a situation where the ALJ erroneously disregarded a form filled out by a treating physician that required the physician to make an assessment based on treatment records both before and after the date of last insured. In *Rogoff*, it appears the treating physician did not give an entirely retrospective diagnosis *and* was actually the plaintiff's treating physician before the date last insured, unlike here. Finally, *Torrez v. Colvin*, 14-cv-00469-LH-KK, considered the ALJ's rejection of 2013 retrospective diagnosis related to the plaintiff's condition in 2005 for the sole reason it did not apply to relevant time period—the plaintiffs 2007 date last insured. On its face, however, the diagnosis in *Torrez* applied to the relevant time period. It is entirely unremarkable, therefore, that the court would find the ALJ's determination unsupported

If Chavez's disagreement is with the ALJ's consideration of Dr. Hanosh's 2013 "medical assessment of limitations to do work-related actves," this opinion was not retrospective. The Court does not read Tenth Circuit case law as requiring any reasoning beyond the ALJ's recognition that normally Dr. Hanosh would be entitled to controlling weight had the treating physician relationship—and the doctor's subsequent opinion—not come years after the last-insured date. *See Adams v. Chater*, 93 F.3d 712, 714 (10th Cir. 1996) (rejecting opinion that did not provide a retrospective diagnosis of disability); *Candelario v. Barnhart*, 166 Fed. App'x. 379, 385 (10th Cir. 2006) (rejecting the plaintiff contention that "[the treating physician's] opinion that he was incapable of even part-time work conflicts with the ALJ's ultimate conclusion" because the doctor "examined him in March 2002, significantly after the date he was last insured [in 1998]" and "that opinion is irrelevant"). In sum, the ALJ properly considered and gave little weight to Dr. Hanosh's opinions.

### 2. *Dr. Vigil*

Because the ALJ considered Dr. Vigil's opinion in tandem with Dr. Hanosh's correspondence, the Court does not repeat its analysis and conclusion that the ALJ adequately weighed and rejected Dr. Vigil's retrospective diagnoses. Nevertheless, Chavez lodges additional objections specific to the ALJ's consideration of Dr. Vigil: (1) the ALJ failed to cite medical evidence contrary to Dr. Vigil's opinion; (2) the ALJ improperly required Dr. Vigil to cite evidence; and (3) the ALJ substituted her own lay judgment for that of a trained physician.

In terms of his first challenge, Chavez does not correctly refer to the applicable legal standard. "[T]he standard of review . . . is not whether the ALJ cited to substantial evidence to

---

by substantial evidence in light of the ALJ's obvious misreading of the opinion and the time period covered in the opinion. In this case, the ALJ determined that Dr. Hanosh's assessment was too remote to be of assistance, not that it did not apply to the relevant time period. Further, Chavez makes a claim of legal error as to the ALJ's reasoning, not the evidence supporting the reason. It would be hard for Chavez to challenge the evidence because he does not actually dispute the dates on which Dr. Hanosh treated him.

support her finding" but whether the decision is supported by such evidence. *Camacho v. Berryhill*, 2017 U.S. Dist. LEXIS 178159, *10-11 (D.N.M. Oct. 27, 2017). Regardless, the ALJ discussed and cited the medical records, which described Chavez's gym attendance, walking on the treadmill, walking at a normal community pace, and doing odd jobs. These "citations" contradict Dr. Vigil's RFC. Even if the Court could read this information differently, the Court may not reweigh the evidence and remand on that basis. *See Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006).

As to Chavez's second claim, the Court agrees there is no formal requirement to cite evidence in formulating a diagnosis. The ALJ, however, is tasked with weighing medical opinions, which properly includes consideration of support in and consistency with the record as a whole. *See Keyes-Zachary*, 695 F.3d at 116. Thus, identifying the bases on which a doctor relies—the purpose of citation—allows the ALJ to more fully consider and assess the opinion. As the regulations provide, "[t]he better an explanation a source provides for an opinion, the more weight [the agency] will give to that opinion." 20 C.F.R § 404.1527(c)(3). Although Dr. Vigil lists the records he reviewed, Dr. Vigil does not explain *how* the records show Chavez could not perform even sedentary work as far back as 2002.

Finally, Chavez complains that the ALJ impermissibly "reject[ed] Dr. Vigil's opinion by speculating as to the extent of his medical judgments and observations." Aside from disagreeing with ALJ's determination, Chavez does not explain how the ALJ substituted her own judgement for Dr. Vigil's, what impermissible inferences she drew, or how the ALJ's decision to afford Dr. Vigil little weight was based solely on the ALJ's credibility judgments or lay opinion. To the extent Chavez suggests the ALJ improperly criticized Dr. Vigil for relying on Chavez's subjective reports of symptomology, it was not the sole reason for the ALJ's weight determination or necessarily an improper consideration. *See Flint,* 951 F.2d at 267 (explaining

that although "subjective testimony can be used to diagnose a physical or mental condition, this type of evidence alone cannot justify an award of benefits"). In sum, the ALJ properly rejected Dr. Vigil's assessment, and the Court rejects Chavez's contrary arguments.

## IV.  CONCLUSION

For the reasons stated above, Chavez has not come forward with law or facts to demonstrate the ALJ's decision was erroneous or that Chavez is entitled to relief.

**IT IS, THEREFORE, ORDERED** that Chavez's motion to reverse or remand [Doc. 21] is **DENIED** and the case is **DISMISSED WITH PREJUDICE**.

_____
KEVIN R. SWEAZEA
UNITED STATES MAGISTRATE JUDGE